Sansone v. Brennan Good morning, may it please the court, counsel. Anthony Sansone prevailed below because the district court committed three errors. First, the court took away the Postal Service's defense by wrongly instructing the jury that it did not matter which party caused the breakdown in the interactive process, even though this court has repeatedly held otherwise. Second, the district court... You know, at some point someone is going to start cooperating in the interactive process. Otherwise, there would never be a lawsuit. So how does the court determine when a party has cooperated enough such that the refusal to continue in the process will not preclude success in litigation? Well, your honor, so this court's prior cases have held that the party who causes the breakdown cannot either impose liability or be prevented from liability. In this case, Mr. Sansone had numerous opportunities to respond to the plaintiff's offers, or sorry, to the Postal Service's offers for accommodations. And on top of that, he was provided a medical record request. He made a reasonable accommodation request and the Postal Service said, okay, can you send us some medical information from your doctor supporting your request? He refused. He didn't do that. And this court has repeatedly held, beginning starting in the 1990s with the Beck case, that failure to respond to that medical record request, it means that the plaintiff or the employee has caused a breakdown and cannot impose liability on the employer. Yeah, but are you saying that it's a requirement for the interactive process that an employee must provide a doctor's note or medical records? Aren't there times that the interactive process wouldn't require such things? Your Honor, the requirement here is that the employee and the employer  No, no, I asked, forgive me, I asked a very direct question. It was kind of a yes or no. It does not always have to be a requirement. No, Your Honor. Right. Counsel, I want to ask you a question about 703. Was it an error of law for the district court to say that it's always inappropriate to show an expert witness a summary judgment motion? It would not be. That wasn't the issue in this case. The question is, so in this case, it was whether it was an error for this witness to have reviewed it. It would be a 703 issue in each instance on whether the summary judgment documents or any legal documents prepared by an attorney, whether an expert's view of that impacted the opinions in one way or the other, and whether that might have taken it away from the realm of being reasonably reliable. But that wasn't the issue here, right? I mean, the issue that what the district judge seemed to suggest, because the witness said she didn't rely on the summary judgment motion. So it seems to me that what the district court was suggesting was that it was inappropriate in the first place for the witness, the expert, to have been provided with the summary judgment motion. So my question is, is the mere provision of the summary judgment motion to the witness to read its background material, even if the witness does not rely on it in drawing that witness's opinion, reaching that opinion, does that violate 703? No, Your Honor. Does it violate 702? No, Your Honor. So if the district court, in admonishing and in sua sponte, saying, you know, but did you rely on the summary judgment motion? That's fine, because that, I mean, we can, let's just posit that under 703, that wasn't something that experts in her field reasonably relied upon. But in instructing the jury that it was inappropriate for the Postal Service to have even provided the summary judgment motion, was that an abuse of discretion because it rested on an error of law? In other words, if it doesn't violate 703, and then the district judge instructed the jury that it was inappropriate even to provide it, was that an error of law? Yes, Your Honor, it was. And it wouldn't even be abuse of discretion. It'd be de novo, because you rule violations of the rule of evidence de novo. And so it was an error of law for him to say that. You know, again, in this, and what was confusing in this instance is that the district court serves as a gatekeeper. And the district judge understood that, and stated that. But as a gatekeeper, you either allow evidence in, or you allow it out, or you exclude it. You're not allowed to allow evidence in, and then opine on the evidence to the jury. You know, saying, oh, I think this is bad evidence because it was inappropriate for the judge, for Postal Service Counsel to have provided summary judgment documents to the witness. Or, I think this is great evidence. That's not the gatekeeper role that district court judges are supposed to have. And am I correct that Mr. Sansone's counsel never objected to the provision of the summary judgment motion to the expert? It was only the district judge who raised that. That's correct, Your Honor. Mr. Sansone's attorney cross-examined the witness about her review of the document. But he never objected, never filed a Dahlberg motion or anything else. So it's your position that the government actually would have preferred the witness to be excluded altogether if the district judge concluded that the provision of the summary judgment motion was impermissible? Well, we don't think that the, right, we don't think that the expert, but yes. Your Honor, as a gatekeeper, if he, if the district judge determined that there was a violation of Rule 703, the proper remedy in that instance is to exclude the evidence. But why would that have been better for you than him attempting to salvage it somewhat by jury instructions that say, you know, listen, give it the weight that it deserves. She shouldn't have considered this. Well, again, I don't think it's better either way because I don't think the expert should have been excluded in any event. But again, in this instance, excluding it or even allowing it in, but then commenting on it is extremely prejudicial to the Postal Service. The district judge is takes this particular district judge, unfortunately no longer with us, but has a view of 703 that doesn't seem to be fit with most people's view of 703. That's correct, Your Honor. And then on top of the instruction, he inappropriately questioned that witness at trial. He admonished Postal Service counsel during closing argument for misrepresenting the expert witness instruction at trial, even though there was no misrepresentation. And then he told the jury that the Postal Service had tried to keep the case from going to them minutes before the jury was set to deliberate. I mean, by doing these things, the district judge made clear to the jury what side he thought should win. And then the third error was post-trial when the district court awarded Mr. Sansone over $800,000 in back and front pay, even though Mr. Sansone never lost any pay. Before we talk about the back pay, let me just ask you one final question about the expert. So let's assume that the district judge erred. In that event, you think that it was prejudicial? Yes, Your Honor. And so you would just ask that the damages award be reversed and it go back for new trial on damages? No, Your Honor. We would ask for entire reversal because when you take the instruction in which the judge says it was inappropriate for the Postal Service counsel to have provided these documents, and then you add it on to the questioning of the witness and then in closing argument, the judge telling Postal Service counsel that he was not being accurate with the jury about the contents of the instruction. But she only testified about damages. She did, Your Honor. But the Postal Service combined the district judge's comments and instruction were so prejudicial and called into question the credibility of not only the witness, but the Postal Service counsel that the district judge's words, as this court has repeatedly held, are so important that the jury was clearly influenced by his statements and his instructions. And so we think it would be a forward whistle. Don't you think it spoils the expert's independence when a party primes its expert with its slanted advocacy? I understand that she didn't rely on it, but as Judge Hader said, it's hard for anyone to put out of mind what they have learned. Don't you think some caution was warranted? No, Your Honor, and for two reasons. One, while the expert looked at the summary judgment documents by the Postal Service, she reviewed documents on the other side of the coin. She reviewed the complaint. She reviewed plaintiff's deposition transcript. So she saw it from both sides. And then on top of that, it didn't... She reviewed what amounted to public documents, right? Yes, Your Honor. They're public. It's a public document. And then on top of that, most importantly, the summary judgment documents went to liability. None of her opinions had to do with liability. They had to do with what was the impact of the parking situation on Mr. Sandstone's mental health. The summary judgment documents don't even get into that. And so it couldn't have influenced her in any way. Counsel, make your best argument as to why you didn't forfeit the arguments about constructive discharge. You had a very brief sentence or two saying, and not entitled to front or back pay because not actually are constructively discharged. Yes, Your Honor. We didn't waive it because after post-trial, in the only brief that we filed on damages, we stated very near the beginning of the brief that he was not clear. He was not entitled to back and front pay because he retired and was not discharged. Then we reminded the court that the postal service never terminated him, that Mr. Sandstone had testified that he retired, and that the district court dismissed the constructive discharge claim. We said that there was no evidence that he was terminated. And on top of that, we put it at the beginning of our foreclose. We don't think any equitable relief, any front and back pay should be provided here. That's the same argument we're making now. Unless the court has any further questions, I'd like to reserve my time for rebuttal. Thank you, counsel. Mr. Strauss. May it please the court. This case presents the story of Tony Sandstone, a disabled man who cannot walk, who was known by the postal service. They knew his limitations and his disability, who informed the postal service what he needed. The postal service did not respond to his request for accommodation, and the jury found he was not properly accommodated. I mean, there was some attempted accommodation. The supervisor said, take my parking space, right? Yeah, the supervisor said, take my parking space, but Mr. Sandstone had made it clear that he needed a parking space where he could deploy the ramp from his van, and that parking space had no such space next to it where he could deploy the ramp from his van. All of the offers from the postal service involved either parking in front, where there were only three to four parking spaces, and they could be taken by the 900 employees who parked at the front of the building, or in back, where there was no room to deploy a ramp from his van. Mr. Sandstone made it clear that he needed a spot where he could deploy the ramp from his van, and the postal service never offered it to him, and never responded to his request. Was there also a requirement for an accommodation? Counsel, can you address why this violates 703, which just talks about what facts that the expert can rely on if they're reasonably relied upon by other experts in the field? Yes, a reasonable expert in the field would not rely on a one-sided set of... Well, she testified she didn't rely on it. She just read it, presumably for the dispute, statement of undisputed material facts. She just read it for background. Why is it impermissible simply to provide that if she doesn't rely on it? Well, she did testify in accordance with what was argued in the summary judgment papers. The summary judgment papers argued that Mr. Sandstone had simply given up, and in her words, thrown in the towel, rather than that he was left without a reasonable accommodation. And her testimony accorded with the theory of the defendant's case that he had... So just because it accorded, she also... I mean, she interviewed him extensively for hours and hours and hours, and she testified that her conclusion was based on that extensive interview of him. Yes, she did testify to that, but her conclusion was based on something other than her interview. She couldn't have based her interview and concluded that he threw in the towel without being influenced by their assertion that he had given up his interactions with the postal service, rather than that he was denied an opportunity to continue working because he was not given a reasonable accommodation. But it's just a matter of cross examination. Those are public documents. And the district judge, as you might acknowledge, really took a very different view of 703 than most judges that I know. I think it was appropriate for him to admonish the jury that this was not the normal course of how experts proceed. They don't normally proceed by getting one-sided set of facts and legal arguments to form their opinions. She also read the deposition. She also read the complaint. So it's not the case that she only read the postal service's documents. That's correct. She did read the complaint and she did read the deposition, but she read the defendant's interpretation of what those things meant and their argument. And she became an advocate for the postal service's position rather than a neutral expert who was testifying based on the type of facts that would be relied on by experts. Well, we don't have very many neutral experts, do we?  Was there anything in the record about whether Mr. Simpson was on the clock or had more flexibility in his arrival times? In other words, did he have to punch in? Would there be ramifications if he arrived at work and couldn't find a spot or get a security officer to open the door and thus would be late for work? He had to be at work at a normal time in the morning at 7 o'clock in the morning, I believe it was, and he came early at 6 in the dark. But if he had no place to park, there was no accommodation that was given to him as to what he was supposed to do. There was no place where he could go. And the security guard could not reasonably open the four doors at the front of the building. That jury found that he was not reasonably accommodated for those reasons. I do want to say with respect to the expert instruction that if this court should reverse on those grounds, we don't think the court should reverse on those grounds. But if it does, that really goes only to the damages part of his compensatory damages trial. That's all Dr. Goldstein testified about. And if there's a reversal on those grounds, it should be remanded, the case should be remanded simply for a trial with respect to his compensatory damages for emotional distress. Counsel, can I ask you about back and front pay here? Yes. Why? I mean, it seems to me that you say that the constructive discharge limitation shouldn't apply because in Hertzberg, we talked about a victim of discrimination and the limitations on front and back pay in that circumstance. But why isn't the constructive or actual discharge limitation simply inherent in that particular remedy and not who's claiming it? I mean, using the phrase victim of discrimination made sense in that context because it was Title VII. In any discrimination case, a plaintiff gets damages for lost wages if the employer stops the employee from working. And in a normal Title VII or an H discrimination case, the employer stops the employee from working by discharging or constructively discharging the employee. But in a disabilities case, the employer stops the employee from working by failing to provide a reasonable accommodation that would allow the employee to work. The postal service prevented Mr. Sansoni from being able to work by failing to give him a reasonable accommodation and therefore it stopped him from working and he's entitled to lost wages as a consequence. But your position is they didn't have to show constructive discharge. It seems to me that if the postal service failed to reasonably accommodate him, some days these parking places may have been open, the handicapped spaces that allowed the ramp to go down. Moreover, he could have gone out on unpaid leave and then been compensated, you know, under our case law for that. He could have been compensated for his unpaid leave, gotten back pay for that, but then he chose to retire. And so it seems to me the question is once he chose to retire, is he entitled then to pay after that point if he voluntarily left? I think he is entitled to pay after that point because the interactive process broke down because the postal service failed to ever come up with it. But it was only a few weeks. It was a month. It was a month of time when he was not allowed to, when he was not provided, it was a month of time from September 14th to the end of October when he was not provided a reasonable accommodation and a place to park. So let's assume that he might be entitled for back pay assuming that he showed, assuming that he showed he simply couldn't work because he hadn't been accommodated when he went on that leave. Let's assume he's entitled to back pay at that time. Why then don't you have to show that at that point, that at the conclusion of that month, that his retirement was effectively a constructive discharge because he hadn't been accommodated? Just seems to me there's a difference between being forced to take unpaid leave because you haven't been reasonably accommodated and then retiring. I think he retired because he could see that the postal service was not in good faith bargaining with him about his accommodation. They weren't ever responding to him and it was reasonable for him to conclude that they were not acting in good faith in trying to find a reasonable accommodation for him and they were not going to do so. I do want to point out that the Postal Service did waive this claim. The only point in which the Postal Service... You know, in its reply brief, the Postal Service states that it did indeed raise the back pay and front pay issue in its post-trial damages brief in the record at 139 pages 1 and 2. Do you disagree with that? Yes. The only thing that the Postal Service said in that brief was a statement that, quote, Sansone should not now be awarded back or front pay or any other equitable relief because the evidence at trial showed that he chose to retire. But the full sentence that they don't cite is that Sansone should not now be awarded back or front pay or any other equitable relief because the evidence at trial showed that he chose to retire and did not attempt to mitigate damages by seeking either to resume his Postal Service career or to work elsewhere. It was an argument about mitigation of damages and that's the only argument they raised. They did not make an argument that a discharge or constructive discharge is necessary to relieve damages for lost wages. They made an argument in which they disagree with Judge Shader's description about the facts. They made an argument about from his calculation of lost wages, but they never made an argument. Nowhere in that brief did they say that a discharge or constructive discharge is necessary to receive damages for lost wages. There's not a legal argument to that effect. There's no case citation to that effect. The argument's just not there. They waived it. I want to get back to the, if the court wants me to get back to the interactive process instruction. The interactive process requires two things. One, it requires that an employee let the employer know the nature of his disability. An employer has to know that and the employee has to let the employer know how the disability can be accommodated. Mr. Sansone met those burdens. It's not an onerous burden. It's not supposed to be a complicated formal process. Mr. Sansone met his burden of telling the Postal Service both the nature of his disability. They knew he had multiple sclerosis. They knew he was unable to walk and he told them what he needed in terms of an accommodation. There was no issue of fact as to those points and so the jury instruction was proper that neither side could win based on a failure to cooperate in the interactive process because Mr. Sansone met the burden of the employee with respect to the interactive process. The Postal Service complains about the jury instruction because it says it Things that the Postal Service responded to Mr. Sansone with were a parking space in the front that was not adequate as the jury found and a parking space in the back that did not have room to deploy the ramp from his van. And when he said that he needed a parking space where he could deploy the ramp from his van, they never responded to those considerations. So he could not reasonably be found at fault for failing to comply with the interactive process where he let them know what the considerations were and what he needed to be accommodated. If there are no further questions, I'll stop. Thank you. Your Honor, starting with the interactive process, the instruction is just wrong. An employee who causes a breakdown can't impose liability. An employer who causes a breakdown can't avoid liability. That's the rule. The only time there's a third option is that the employer can't avoid liability if a reasonable accommodation wasn't possible. That's not the case here. Both parties agree that a reasonable accommodation could have been possible and so the jury was allowed to decide and should have been able to decide who caused the breakdown, at least try to make that determination. In fact, it's perplexing that the district court didn't even give them that opportunity when that was its basis for denial on summary judgment. That, hey, you know, we don't know who caused the breakdown. That's an issue of fact. Let's send it to the jury. And then the jury instruction prevented the jury from making that determination. Do you understand that Judge Shader followed the Seventh Circuit pattern instructions almost to a T here? Yes, Your Honor, and the pattern instruction is wrong. It's not authoritative and it's wrong. It's from, you know, it's from prior to, at least prior to 2004, and it simply misstates the law. This court has held differently in moving on to Sears, Jackson, etc. At some time, some party has to decide that the interactive process is not working and, you know, call it quits. So it cannot be that the person who calls it quits always loses. That makes no sense. Agreed, Your Honor. And that's not the position that I'm trying to take. Just because a person might call it quits, if you keep asking for a parking spot, for instance, and they keep giving you an office as an accommodation, if you quit, no one can blame you because you're saying, A, and they're giving you B. That makes sense. Yes, but if you're saying I need a parking space where my ramp will work or whatever the issue may be, and they keep giving you a parking space that will absolutely not accommodate your ramp, that is not the interactive process. Your Honor. Excuse me. Sorry, Your Honor. It's a unilateral decision that was made by the post office. No, Your Honor. Respectfully, there were six spots in the front parking lot that had enough space for Mr. Sansone's van, and then Mr. Sansone asked for automatic doors. Now, the Postal Service never said no to automatic doors. It asked him for medical documentation, but in the interim, it offered him a temporary solution, which was we'll have the security guards open the doors for you. Now, Mr. Sansone now claims that that solution was impractical, but he never communicated that to the Postal Service. He says that the plant manager spot was unsuitable, but again, he never communicated that to the Postal Service, and he complains that, hey, maybe the parking spots in the front lot may have been taken. Well, the plant manager was disabled, and his supervisor was disabled. They were the only two people at trial who actually parked in the front parking lot in a disability parking space. Both of them said at six in the morning, they wouldn't have had an issue finding a parking space, so he didn't need a designated. I think I read something differently than you are arguing. He sent email. He interacted with his supervisor. He made it clear that he needed two things to be accommodated, a reliable space to accommodate his ramp, and an automatic door. Yes, Your Honor. He sent that email on Tuesday. The opportunities that were offered were not the results of an interactive process. No one asked Sansone if they would work. It was just a unilateral decision to offer him one of these two spots, and Sansone alleged, and the jury agreed, that they would not have. He could not be guaranteed one of the spots with room for his ramp in the front, and the supervisor's spot also did not have room for his ramp. Your Honor, there's no doubt that there was a factual dispute between the parties as to who caused the breakdown. Mr. Sansone claims it was the Postal Service. The Postal Service claims it was Mr. Sansone. The problem here is because of the improper instruction, an incorrect jury instruction on the interactive process, the jury wasn't allowed to make that determination. They were told it doesn't matter, and that was an error. I say I've gone over my time, so unless there are any other questions, I would ask that this court reverse the case, reverse the judgment, and remand the case to the District Court. Thank you. Thank you very much. Thanks to both counsel. The case will be taken under advisement, and we'll take a brief recess before taking up case number five.